## KELLY v. McDONALD.

1. TRESPASS DE ASPORTATIS: *Not condoned by offer to return the goods.*
   Where a trespass has been committed and goods carried away, the injured party is not obliged to accept an offered compromise, or to receive the goods upon a proposed return of them, but he may stand upon his legal rights.

2. DAMAGES: *In trespass de asportatis: Exemplary damages.*
   In trespass for taking personal property, where no circumstances of aggravation are shown, the value of the property, with interest, furnishes the measure of damages. Exemplary damages should not be given unless in cases of intentional violation of another's right, or where a proper act is done with an excess of force or violence, or with malicious intent to injure another in his person or property.

3. NEW TRIAL: *For excessive damages.*
   A new trial will be granted where the damages are so excessive as to show passion, prejudice, or incorrect appreciation of the law applicable to the case.

APPEAL from *Monroe* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*S. P. Hughes,* for appellant:

There was no malice, no improper motive, no harshness, no wrong intent, and therefore no room for exemplary damages. Where goods are wrongfully taken and returned before action brought, plaintiff can only recover nominal damages. In tort the rule is, *compensation*, and in no case

can plaintiff recover more than will compensate him, unless there is malice.   *Moore v. Raphael, 2 Bingham, N. C., 310; 1 Sedgwick Measure of Damages, side p. 115, n. a.,* and cases cited.

STATEMENT.

ENGLISH, C. J.   This was an action for trespass brought in the Circuit Court of Monroe County by Eliza McDonald and her husband, D. McDonald, against S. S. Westbay and Mike Kelly.

The husband joined the wife in the action, but disclaimed any interest in the property which was the subject of the suit.

The complaint alleged, in substance, that on the twenty-eighth of January, 1880, plaintiff Elizabeth was the owner, and possessed in her own exclusive right, of a sewing machine of the value of forty dollars, a clock of the value of ten dollars, and a bracket of the value of one dollar and fifty cents.

That on said day, defendant S. S. Westbay, claiming to be a constable of Brinkley township, in Monroe County, came to the residence of plaintiffs and levied an execution upon said property, took charge of, and removed it from the possession of plaintiff Elizabeth.

That the execution so levied on the property was issued by a justice of the peace of said township on a judgment in favor of defendant, Mike Kelly, against the husband of said Elizabeth.

That she was not a party to the judgment, and her property was not subject to execution for the satisfaction thereof; of all which defendant Westbay had notice when he seized and removed the property; but in disregard of her rights and entreaties he exposed the same to sale, on the ninth day of February, 1880, at public auction, to the highest bidder, on the streets of the town of Brinkley.

That defendant, Mike Kelly, also knew that Elizabeth claimed the property, and executed to defendaut Westbay, as constable, a bond of indemnity, etc.

That defendants were prompted by malice in the seizure and sale of the property, and plaintiff, Elizabeth, was greatly damaged thereby, not only in being deprived of the use of the property in the support and maintenance of her family, and in the carrying on of her domestic affairs, but that it was a source of great humiliation and pain to her feelings, to have her own individual property, acquired by her own labor, and paid for from her own funds, illegally and unjustly seized, and exposed to sale in the streets of the town in which she lived; and she laid her damages at one thousand dollars.

After demurrer to the complaint overruled, defendants filed a joint answer, in which they denied that plaintiff, Elizabeth, was the separate owner of the property ; alleged that it belonged to her husband, and was subject to execution, and justified its seizure and sale under the execution referred to in the complaint.

There was a trial by jury, the seventh day of April, 1881, and a verdict in favor of "plaintiff" for $117.53 damages, against Mike Kelly, and defendant Westbay was acquitted.

Kelly moved for a new trial, which was refused; he took a bill of exceptions; judgment was rendered against him for the damages awarded by the verdict, and he appealed.

OPINION.

I. It was proved upon the trial that Mrs. McDonald purchased the sewing machine, clock and bracket with money earned by her own labor in 1869, but there was no evidence that she had ever scheduled them as her separate property. Neither the judgment against her husband, nor the execution upon it under which the property was levied

and sold, was read in evidence, nor was it proved when the debt was contracted, for which the judgment was rendered, whether before or after the passage of the scheduling act of December 15, 1875. *Acts of 1875, p. 172.*

No exceptions were taken to the instructions of the court below to the jury, and counsel for appellant has made no point here as to the scheduling of the property, and therefore, as to that, we decide nothing. See, on that subject, *Berlin v. Cantrell, 33 Ark., 611, and cases cited; Dyer v. Arnold et al., 37 ib., 17; Tiller & Taylor et al. v. McCoy, 38 ib., 91.*

II. It was made ground of the motion for a new trial, that the damages were excessive, and this is the only question argued and submitted by counsel for appellant.

On the trial Mrs. McDonald testified, in substance, that the sewing machine, clock and bracket were her property, bought with her own money, and her husband had nothing to do with it. That she bought the property herself in 1869, in Memphis, Tennessee, and gave $40 for the sewing machine, and $11.50 for the clock and bracket, and that she earned the money by her own labor; and she produced and exhibited purchase bills for the property, made out in her own name, and receipted.

That the property was seized by defendant, Westbay, as constable, and levied on as the property of her husband, to satisfy an execution against him in favor of defendant, Kelly. That she notified Westbay before, and at the time of the levy, that the property was hers, but he took it, and sold it at public auction. That she was greatly mortified to have her property taken from her house, and sold publicly in the streets, and bought by a pauper. That one Conawah bought it.

That some month or two after the sale Westbay offered to return the property to her, but she refused to receive it.

That by reason of his having taken the sewing machine she was obliged to, and did pay out $12.50 for sewing, that she would not have had to pay if she had had her machine. That when Westbay came to levy upon the property, he said he regretted to have it to do, but was told to do it by Mike Kelly.

That when she married McDonald she had no separate property or estate, and brought none into the marriage.

She was permitted, against the objection of defendants, to read in evidence the bond of indemnity executed by Kelly to Westbay, as constable, and which was set out in the complaint, and which showed the connection of Kelly with the trespass complained of.

J. K. Whitson, witness for plaintiff, testified in substance, that he was present when D. McDonald's property was appraised, under his claim of it as exempt from seizure and sale by virtne of the execution against him in favor of Mike Kelly, and the sewing machine, clock and bracket were not included in his schedule, and were not appraised by the appraisers. That Mrs. McDonald was present, and claimed them as her own property, and dared any one to levy on them. That the officer was afraid of her, she being much excited. That Westbay, and the attorneys of Kelly were present at the appraisement of McDonald's property, scheduled by him against the execution.

It was admitted on the trial that the sewing machine, clock and bracket were seized by Westbay as constable, by virtue of a valid execution in favor of Kelly against McDonald, husband of plaintiff, Elizabeth, and was sold by virtue thereof to satisfy the same, no question being made as to regularity.

Westbay, on the part of the defense, testified that he levied the execution on property of D. McDonald, who filed his schedule, and claimed his exemptions. That the property

was appraised and released; and the sewing machine, clock and bracket were not included in the schedule, and he was requested by Mike Kelly to levy the execution on them, and having required of him a bond of indemnity, which was given, he went to J. K. Whitson, the attorney of McDonald, and requested him to see Mrs. McDonald, and tell her it was his duty to levy on the property, to which he assented; and afterwards witness went to McDonald's residence, and told Mrs. McDonald his business; and she set out the sewing machine, and pointed out the clock, which he took down, as she was not tall enough to reach it. She made no resistance, and willingly put the property in his possession. He took it as a constable, and advertised and sold it under the execution, and it was bought by Conawah, who bid off the property, but did not pay for it. Some time after the sale, McDonald paid the Kelly debt, and witness offered to return to Mrs. McDonald the sewing machine, clock and bracket, which she declined to receive. The property was uninjured, and was yet in his possession. The sewing machine was worth $25, the clock and bracket eight or ten dollars. Witness used no harshness or rudeness in levying the execution, or taking possession of the property, and told Mrs. McDonald he regretted to have to do it.

Mike Kelly testified that he believed, and still believed, that the sewing machine, clock and bracket were subject to sale to satisfy his execution against McDonald. That he believed it to be his property, and desiring to make his debt only, he had it levied on, and sold under the execution. He had no malice or wrong intent in the matter.

The above is the substance of all the evidence as set out in the bill of exceptions.

Kelly v. McDonald.

(a.) Appellant's counsel submits that inasmuch as the constable offered to return the property to appellee uninjured, she was entitled to recover nominal damage only.

But this is not law. Where a trespass has been committed and goods carried away, the injured party is not obliged to accept an offer to compromise, or receive the goods upon restoration proposed, but may stand by his legal rights. *Moak's Underhill on Torts, p. 95*, and cases cited.

(b.) It has often been decided that when trespass is brought for personal property, and no circumstances of aggravation are shown, the value of the property, with interest, furnishes the measure of damages. *Sedgwick on the Measure of Damages (6th ed.), p. 663, and cases cited in note 1.*

Mrs. McDonald testified that she paid $51.50 for the property in 1869, which was about ten years before the trespass. What it was then worth she did not state. Westbay fixed its value at not more than $35. The verdict was for $117.53 damages.

Exemplary damages ought not to be given, unless in case of intentional violation of another's right, or when a proper act is done with an excess of force or violence, or with malicious intent to injure another in his person or property.

A new trial will be granted when the damages are so excessive as to show prejudice, passion, or incorrect appreciation of the law applicable to the case. *Moak's Underhill on Torts, p. 74, and cases cited.*

In *Clark et al. v. Bales, 15 Ark., 452*, the property was worth only $25, and the verdict for $100 damages, and this court refused to disturb it; but that was a wanton and aggravated trespass.

Here there was no indication of malice or violence on the part of appellant. He was not present when the prop-

1. TRESPASS DE ASPORTATIS. Not cured by returning the goods.

2. SAME: Exemplary damages.

3. New trial for excessive damages.

erty was levied on and removed by the constable. He believed it to be the property of his debtor, requested it to be levied on, and gave the constable a bond of indemnity. The conduct of the constable was so prudent, delicate and free from violence or malice, that the jury acquitted him, though he was legally liable to Mrs. McDonald for the trespass upon her goods.

It is the opinion of the court that the damages awarded by the jury were excessive.

Reversed and remanded for a new trial.